IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02356-RBJ

Erin L. Lebsack

    Plaintiff(s),

v.

Jorge L. Rios and Seaboard Foods, LLC, a Limited Liability Company, d/b/a Seaboard Farms

    Defendant(s).

---

## DEFENDANTS' MOTION FOR
## DECLARATORY DETERMINATION

---

COMES NOW the Defendants, Jorge L. Rios and Seaboard Foods, LLC (jointly "Seaboard") by and through their attorneys, Waltz|Reeves, and hereby submit their Motion For Declaratory Determination[1] and state as follows:

> **D.C.COLO.LCivR 7.1(a) CERTIFICATION:**
>
> Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that he has consulted with Plaintiff's counsel regarding the request made herein. Plaintiff's counsel opposes the relief requested herein.

---

[1] The court may treat this motion as a non-dispositive motion, which may be resolved by the court pursuant to 28 U.S.C. § 636(b)(l)(A).

## I.   QUESTION PRESENTED:

What amount, if any, may a plaintiff seek to recover and otherwise claim at trial for benefits authorized and paid by workers' compensation, including medical expenses, disability benefits, and lost wages, where the worker's compensation carrier has subsequently settled its claims for those same benefits with a defendant?

## II.   FACTUAL BACKGROUND:

Plaintiff Erin Lebsack's claims arise from an automobile accident that occurred on September 27, 2013, while working for non-party TMB Corporation (TMB). Plaintiff, thereafter, claimed and received workers' compensation benefits from TMB and its insurer, Pharmacist Mutual Insurance Company (PMI). Ex. A, *Employer's First Report of Injury*. A Final Admission of Liability was executed by TMB/PMI on January 29, 2015. Ex. B, *Final Admission*. Although the billed amounts for Plaintiff's medical treatment exceeded **$152,575.62**, PMI satisfied all medical bills with payments amounting to **$67,434.46**. Ex. C, *PMI Demand Letter*. All past medical treatment from the date of injury to June 7, 2016 was covered and paid for by TMB/PMI through workers' compensation. Plaintiff also received approximately **$19,270.92** in payments from TMB/PMI for her claims of physical impairment and lost wages for the same time period. *Id*. Plaintiff ultimately settled her workers' compensation claim on June 17, 2016. Ex. D, *Settlement*.

On September 19, 2016, Ms. Lebsack sued Defendants for the accident, seeking to recover, among other damages, **$152,575.62** in prior medical bills, **$10,000** in lost wages, and an unidentified amount for physical impairment that had been paid for/satisfied under her workers' compensation claim. [Doc. #1] and Plaintiff's Initial Disclosures, Ex. E, at p.15, *Initial*

*Disclosures*. On September 26, 2016, PMI similarly sued Defendants in Sedgwick County District Court, Case No. 16cv30012, for the fully amount of all benefits paid to, or on behalf of, Ms. Lebsack, in the amount of **$90,167.81**. Ex. F, *PMI Complaint*. On March 3, 2017, Defendants settled the workers' compensation lawsuit. Ex. G, *Notice of Settlement*. That settlement is confidential.

Although Defendants have settled the workers' compensation litigation and claims, Plaintiff nonetheless maintains that she can claim and recover for those benefits in her own lawsuit. Defendants maintain that Plaintiff has no right to claim and collect for benefits paid by workers' compensation that they have since settled and satisfied. To otherwise permit Plaintiff to claim and seek recovery for those benefits would constitute a windfall and otherwise force Defendants to pay twice. As this legal dispute materially impacts the scope of discovery, the positions each party is and will take in this litigation, and the overall exposure of Plaintiff's claims, Defendants ask this court to make at this time a ruling as to the impact of the settlement with the workers' compensation carrier.

### III. ARGUMENT AND CITATION TO AUTHORITY

#### A. PLAINTIFF DOES NOT OWN OR HAVE STANDING TO CLAIM PRIOR MEDICAL SPECIALS, LOST WAGES, AND DISABILITY BENEFITS PAID BY WORKERS' COMPENSATION

Plaintiff improperly seeks in this litigation, and ultimately at trial, to claim damages for which she does not have a right or standing. Specifically, she treated between September 27, 2013 and June 2016. She collected workers' compensation benefits, wherein her employer authorized full payment and accepted liability. The figures at issue in this case are as follows:

   Billed Medical Amount:      $152,575.62
   Paid Medical Amount by WC:    $67,434.46
   Paid Lost Wages/Disability:     $19,270.92

 TMB/PMI subsequently settled with Defendants its lien for the medical, disability, and lost wages amounts for a confidential amount. Plaintiff nonetheless maintains that she can claim $152,575.62 in medical specials, $10,000 in lost wages, and an undisclosed figure in disability damages.

 Payment of workers' compensation benefits operates as an assignment of the claim to the workers' compensation insurer. C.R.S. § 8-41-203(1)(b) defines the workers' compensation carrier's right to recovery as:

> The payment of compensation pursuant to articles 40 to 47 of this title shall operate as and be an assignment of the cause of action against such other person to . . . . the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury.

 This statutory assignment creates two claims, one "owned" by the employee and the other "owned" by the party paying the workers' compensation benefits. *Sneath v. Express Messenger,* 931 P.2d 565 (Colo. App. 1996). Under C.R.S. §8-41-203(1)(e)(II), the workers' compensation carrier or self-insured employer, as the beneficiary of the assigned and subrogated cause of action, may pursue its claim independent from the injured employees.

 The policy behind C.R.S. § 8-41-203 is to avoid double recovery by claimants who have received such workers' compensation benefits. Therefore, C.R.S. § 8-41-203(1)(c) provides that

4

the workers' compensation carrier's recovery rights extend to all benefits that are payable under the Workers' Compensation Act:

> The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee or, if the employee is deceased, the employee's dependents are entitled under the provisions of said articles, including parts 2 and 3 of article 46 of this title, or for which the employee's employer or insurance carrier is liable or has assumed liability.

Furthermore, payment for all authorized medical treatment in workers' compensation cases is made according to the Colorado Fee Schedule. Any medical bill in excess of the Fee Schedule is void and unenforceable. C.R.S. § 8-42-101(3)(a)(1) states:

> The director shall establish a schedule fixing the fees for which all surgical, hospital, dental, nursing, vocational rehabilitation, and medical services, whether related to treatment or not, pertaining to injured employees under this section shall be compensated. It is unlawful, void, and unenforceable as a debt for any physician, chiropractor, hospital, person, expert witness, reviewer, evaluator, or institution to contract with, bill, or charge any party for services, rendered in connection with injuries coming within the purview of this article or an applicable fee schedule, which are or may be in excess of said fee schedule unless such charges are approved by the director.

As a result, evidence of amounts billed to the workers' compensation carrier that were in excess of the amounts paid is irrelevant. Such bills are void *ab initio*. Plaintiff is not liable for payment of medical bills approved by workers' compensation once liability is admitted by the carrier, and/or she settles the claim. Unlike non-workers' compensation medical treatment, providers can never seek payment for authorized treatment from the injured worker. C.R.S. § 8-42-101(4) states:

> Once there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, a medical provider shall under no circumstances seek to recover such costs or fees from the employee.

Here, a Final Admission of Liability was executed by Plaintiff's employer, TMB on January 29, 2015. *See* Ex. B. Moreover, those bills authorized by the carrier after January 29, 2015 were otherwise satisfied and resolved as part of Plaintiff's settlement with the carrier. Ex. D. As a result, any difference between the amount billed to TMB/PMI and amount paid by them cannot be collected from the Plaintiff. She waived all rights to those claims when she accepted authorized medical treatment and, ultimately, when she settled. Allowing the Plaintiff to recover for medical expenses for which she never incurred liability would result in a windfall.

TMB/PMI was, by law, the owner of the subrogation claim regarding those medical expenses, and TMB/PMI lawfully pursued the claim against Defendants. *See, Sanger v. Larson Constructio n Co.*, 251 P2d 930 (Colo. 1953), *Klein v. Munz*, 286 P. 112 (Colo. 1930), and *Wyman v. Colorado National Bank*, 5 Colo. 30 (1879)). Plaintiff cannot simply say that even though TMB/PMI, pursuant to C.R.S. § 8-41-203, was the legal owner of the medical bill claim, and pursued that claim, that somehow the she still gets to also present that claim. There is no (and never was) legal right of the Plaintiff to simply try to appropriate any portion of TMB/PMI's legal rights in order to try to recover/present medical bill sums against Defendants in this action.

The Plaintiff, by trying to appropriate a legal claim that never belonged to her, and by trying to introduce numerical information has nothing to do with any claim she possesses, will create a confusing, prejudicial and a complete waste of time situation pursuant to C.R.E. 403. Because Ms. Lebsack never legally owned the medical bill claim in this case, she cannot present any evidence of that medical bill claim to the jury. Similarly, she has already been compensated for her lost wages and disability claims. To allow her to nonetheless present evidence of such

damages could result in an award of damages to the Plaintiff that she is not legally entitled to claim nor receive.

### B. THE COLLATERAL SOURCE RULE DOES NOT OTHERWISE PERMIT PLAINTIFF TO CLAIM BENEFITS PAID BY WORKERS' COMPENSATION.

Plaintiff cannot try to avoid the legal effect of her lack of standing under the guise of the "collateral source rule." Contrary to what Plaintiff may claim, the collateral source rule does not permit Plaintiff to claim and present evidence of medical bills covered by workers' compensation where the Defendants have since settled the lien on those benefits. Colorado's collateral source rule consists of two components: (1) a post-verdict setoff rule codified at C.R.S. § 13-21-111.6; and (2) a pre-verdict evidentiary component arising under the common law. *Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562, 564 (Colo. 2012).

Regarding the post-verdict component, C.R.S. 13-21-111.6 provides:

> In any action by any person…to recover damages for a tort resulting in…injury to person…, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person…has been or will be wholly or partially indemnified or compensated for his loss by any other person… [or] insurance company…in relation to the injury…; except that the verdict shall not be reduced by the amount by which such person…has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. The court shall enter judgment on such reduced amount.

As the Colorado Supreme Court noted in *Crossgrove*, prior to the enactment of this statute, "the common law collateral source rule applied both pre-and post-verdict, often resulting in a tort plaintiff's double recovery of medical expenses because a collateral source would cover expenses incurred as a result of the tortfeasor's negligence, and then the plaintiff could recover the expenses

again from the tortfeasor in the form of damages." *Crossgrove*, 276 P.3d at 564. To limit double recovery, the General Assembly enacted C.R.S. § 13-21-111.6 requiring a trial court to reduce a successful plaintiff's verdict as a matter of law by the amount that the plaintiff had been or would be compensated for his loss by someone else. *Id.* The statute preserves, however, the common law post-verdict component of the collateral source rule "to a limited extent by prohibiting trial courts from reducing a plaintiffs verdict by the amount of indemnification or compensation that the plaintiff has received or will receive in the future, from a benefit paid as a result of a contract entered into and paid for by or on behalf of the plaintiff." *Id.* at 566 (citations and internal quotation omitted).

This "contract exception prevents the tortfeasor from benefitting from the plaintiff's purchase of insurance." *Id.* "It does not necessarily, however, result in double recovery by the plaintiff because the plaintiff must often subrogate the party with whom he contracted." *Id.* "Under the common subrogation framework, an insurer pays for the plaintiff's medical expenses up front then the plaintiff collects the cost of the treatment from the tortfeasor under the contract exception in section 13-21-111.6." *Id.* (citation omitted). "After receiving the damages award, the plaintiff reimburses the insurer for the cost of the treatment." *Id.* Consequently, while a trial court cannot reduce a plaintiff's damage award by the amount paid by a party with whom the party has contracted, the plaintiff's subrogation obligation will prevent his double recovery." *Id.*

The pre-verdict evidentiary prong of the rule precludes the admission of evidence at trial about the plaintiff's receipt of collateral source compensation. *McLaughlin v. BNSF Ry. Co.*, 300 P.3d 925, 939 (Colo. App. 2012). Based on this rule, evidence relating to the fact that a plaintiff may have received benefits from a source collateral to the defendant is inadmissible. *Crossgrove*,

276 P.3d at 566. More specifically, "[t]he collateral source rule prohibits a jury or trial court from ever considering payments or compensation that an injured plaintiff receives from his or her third-party insurance." *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083-84 (Colo. 2010). "A plaintiff's insurer is a collateral source because it is a third party wholly independent of the tortfeasor to which the tortfeasor has not contributed." *Crossgrove*, 276 P.3d at 568 (citation omitted).

"Admitting amounts paid evidence for any purpose, including the purpose of determining reasonable value, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source – most commonly an insurer – from the evidence, and thereby improperly diminish the plaintiff's damages award." *Id.* (citations omitted). This rule extends to evidence relating to a discounted amount paid in satisfaction of medical bills. *Crossgrove v. Wal-Mart Stores, Inc.*, 280 P.3d 29, 32 (Colo. App. 2010), *aff'd* 276 P.3d 562 (Colo. 2012). As the Colorado Court of Appeals found in *Crossgrove*, "evidence of the amount paid by third-party payors, and, conversely, the amount discounted (or written off) from the billed amount due under a contract between the third-party payor and the providers, is inadmissible under the common law collateral source rule even to show the reasonable value of services rendered, because these payments and discounts constitute collateral sources." *Id.* Allowing consideration of the amount of discounted payments as evidence of the reasonable value of a plaintiff's medical services will cause the jury to receive a distorted, misleading, and incomplete picture because "the discounted rate paid by third-party payors generally represents factors besides the reasonable value of the services rendered." *Id.*

Important to this case, the purpose of the rule is to prevent a tortfeasor from benefitting, in

9

the form of reduced liability, from compensation in the form of money or services that the victim received from a third-party source. *Gardenswartz*, 242 P.3d at 1083. The collateral source rule is based on the policy that *"[i]f either party is to receive a windfall, the rule awards it to the injured plaintiff who was wise enough to secure compensation from an independent source, and not to the tortfeasor, who has done nothing to provide the compensation and seeks only to take advantage of third-party benefits obtained by the plaintiff." Id.* (emphasis added). The rule is based on the premise that "*[t]he wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation." Id.* (emphasis added).

The question raised in this motion is whether Ms. Lebsack is permitted to introduce evidence of all medical expenses billed to her workers' compensation carrier (PMI) that were in excess of the amounts paid under the statute where Defendants settled PMI's subrogation claim. Although the general collateral source rule precludes admitting evidence of discounted payments for medical treatment at trial, no Colorado case reconciling the impact of the statutory prohibition against charging for medical services in excess of the Fee Schedule under the workers' compensation act, the effect of settlement of a subrogation claim, and the collateral source rule. This is no typical workers' compensation subrogation issue. What distinguishes this case is that with respect to the workers' compensation benefits received by Plaintiff as a result of the incident. PMI's subrogation claim has been settled and paid by Defendants already. Therefore, the collateral source rule does not apply under the circumstances of this case.

First, the Colorado Supreme Court has held that the collateral source rule does not apply to cases *where the defendant has contributed to the payment by settling the insurer's subrogation claim directly with the insurer who paid for the loss. Ferrellgas, Inc. v. Yeiser, 247 P.3d 1022-*

*1028 (Colo. 2011)* (finding the collateral source doctrine inapplicable to bar the post-verdict setoff of payment attributable to the defendant). Although *Ferrellgas* relates to the post-verdict setoff component of the collateral source rule, by analogy, the same should be true with respect to the pre-verdict evidentiary component. As discussed above, the purpose of the pre-evidentiary component to the collateral source rule is to ensure that the tortfeasor does not enjoy the benefit of a contract for which the tortfeasor paid no compensation. *Gardenswartz*, 242 P.3d at 1083. This is not the case here, however. The tortfeasors, Seaboard and Rios, are not seeking to reap the benefit of a contract for which it paid nothing, nor is this a situation in which they have done nothing to provide the compensation and seeks only to take advantage of third-party benefits obtained by Lebsack. Consequently, application of the collateral source doctrine to the unique circumstances of this case does not advance the purpose of the rule. As held by the Supreme Court of Colorado in *Ferrellgas*, where the subrogation rights of the insurer are satisfied by the Defendants, Plaintiff has no right to nonetheless claim any portion of those benefits in her own case. She cannot claim any differences in any amount, nor any interest on any such amounts. She lacks any such claims.

Second, applying the pre-verdict evidentiary component of the collateral source rule here would render provisions of the workers' compensation statute meaningless and lead to an absurd result in this case in contravention of the rules of statutory construction. *See Foiles v. Whittman*, 233 P.3d 697, 699 (Colo. 2010) (if more than one statute addresses an issue, the statutes should be read together); *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011) (interpretations of statutes leading to an absurd result are to be avoided). Under C.R.S. § 8-42-101(3)(a)(l), amounts billed for medical treatment in excess of the Fee Schedule are "unlawful," "void," and "unenforceable." Moreover, after an employer is found liable for payment of an employee's

medical costs, a medical provider cannot, under any circumstances, seek to recover the costs or fees from the employee. C.R.S § 8-42-101(4). It is undisputed that a Final Admission of Liability was executed by TMB, Lebsack's employer, here and that the carrier ultimately paid a total of **$67,434.46** in medical expenses and another **$19,270.92** in disability and lost wages on behalf of Ms. Lebsack as part Plaintiff's settlement with the carrier. Plaintiff thereafter waived all rights to seek recovery for those benefits and expenses. Allowing Lebsack to introduce evidence of any amount billed in excess of that actually paid by TMB/PMI would allow Plaintiff to seek damages for bills that *never, as a matter of law*, amounted to a legal obligation to pay. This would constitute a windfall in favor of Ms. Lebsack to recover for medical expenses for which she never incurred liability. *See Tate v. Statco Eng'g & Fabricators, Inc.*, No. 12-CV-0002-JHP, 2014 WL 509521, at *3 (E.D. Okla. Feb. 7, 2014) (finding as a matter of first impression under Oklahoma law that the collateral source rule did not apply to workers' compensation "write-offs" because the write-offs were statutorily imposed and the plaintiff had no legal obligation to pay amounts billed for medical care).

Third, in the context of payments made under the workers' compensation statute amounts billed are irrelevant under C.R.E. 401 and even if remotely relevant should be excluded under C.R.E. 403. Amounts billed to Ms. Lebsack's workers' compensation carrier do not make the existence of any fact that is of consequence to the determination of this action more or less probable than it would be without the evidence. The sole issue in this case is the amount of damages suffered by Plaintiff as a result of the incident. Amounts billed in excess of what may legally be charged under the workers' compensation statute, and for which Plaintiff can never be liable, do not make the existence of her damages more or less probable. Assuming, *arguendo*, that some probative

value could be identified for evidence of void and unenforceable amounts billed in excess of the Fee Schedule, it is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. The jury will be misled as to Plaintiff's damages. The jury may mistakenly charge Defendants with damages that are barred by the workers' compensation statute, and Defendants will be required to explain why the amounts hilled are not reflective of reality.

### IV.     CONCLUSION

As the scope of discovery and evaluation of both sides' case hinges upon this legal determination, this Court is asked to clearly establish the rights of the parties before they advance further in this litigation.  It is Defendant's position that Plaintiff lacks standing to claim prior medical bills, wages loss, and disability benefits previously resolved in her workers' compensation claim and then in Defendants' settlement with the workers' compensation carrier.  Plaintiff cannot otherwise seek the difference between the TMB/PMI's (or Defendants') payments to satisfy her medical bills and the billed amounts.  Admitting such testimony and evidence would insert "unfair prejudice, confusion of the issues, and mislead the jury."

WHEREFORE, Defendants Jorge L. Rios and Seaboard Foods, LLC respectfully ask this Court to find that Plaintiff lacks standing to claim any medical treatment, lost wages, and disability damages previously satisfied in her workers' compensation claim and settled by the Defendants.

Dated this 3rd day of April, 2017.

By:     s/Christopher R. Reeves
        Richard A. Waltz, #11567
        Christopher R. Reeves, # 44329

In accordance with C.R.C.P. 121 (c) §1-26 (7) a printed copy of this document with original signatures is being maintained by this filing party and will be made available for inspection by other parties or the Court upon request.

## CERTIFICATE OF SERVICE

I hereby certify that a true correct copy of Defendants' Motion For Declaratory Determination has been served on this 3rd day of April, 2017 by service through CM/ECF, addressed to the following:

Michael W. Chaloupka, Esq.  
Metier Law Firm, LLC  
4828 S. College Avenue  
Fort Collins, CO  80525

Maren Lynn Chaloupka, Esq.  
Chaloupka, Holyoke, Snyder, Chaloupka, & Longoria, PC  
PO Box 2424  
1714 2nd Avenue  
Scottsbluff, NE  69361

s/Casandra E. Miller  
Waltz|Reeves