IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02356-RBJ

Erin L. Lebsack

    Plaintiff,

v.

Jorge L. Rios and Seaboard Foods, LLC, a Limited Liability Company, d/b/a Seaboard Farms

    Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR DECLARATORY DETERMINATION**

---

COME NOW defendants, Jorge L. Rios and Seaboard Foods, LLC (jointly "Seaboard") by and through their attorneys, Waltz|Reeves, and hereby submit their Reply in Support of Their Motion For Declaratory Determination and state as follows:

**I.    REQUEST FOR CERTIFICATION TO THE COLORADO SUPREME COURT:**

The Parties' competing motions present an issues of first impression. The Parties agree that Colorado law applies. To date, no Colorado appellate court has interpreted the issues presented. Therefore, defendants request that these questions of law be certified to the Colorado Supreme Court pursuant to Colo. App. R. 21.1(a).

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. DEFENDANTS HAVE RIGHTFULLY SETTLED DIRECTLY WITH PLAINTIFF'S WORKERS' COMPENSATION CARRIER.

From the outset, this Court is likely inclined to ask itself, *why are we here? How did this happen?* Generally, the workers' compensation carrier would sit behind a plaintiff and out-of-reach of the alleged tortfeasor to await a time to negotiate with the plaintiff, alone, once settlement talks commenced or a verdict is obtained. Plaintiff complains in this case that in settling directly with workers' compensation, defendants have improperly "interfered with the unique relationship" between plaintiff and her workers' compensation carrier. *See, Response*, at 7.

As previously discussed in other briefing and herein, plaintiff has no legal right to control workers' compensation's actions in trying to recover under its subrogation interests. Nonetheless, plaintiff and her counsel, Andrew Snyder, attempted to play hardball with her carrier pre-suit by sending it a cease-and-desist letter in September 2016, instructing it to not contact defendants.[1] That obviously did not sit well with the carrier, who immediately contacted the defendants to commence settlement discussions. *See*, Ex. H, *Claims Notes Re Plaintiff's Letter.* That is why we are here. No sneaky maneuvers, no backroom deals. Simply put, plaintiff's aggressive actions did not inure to her benefit in this case.

---

[1] These letters to workers' compensation carriers have recently become routine from the plaintiffs bar, although the undersigned is unaware of any legal backing to support such a demand and interference with the carrier's settlement attempts.

## B. PLAINTIFF HAS NO RIGHT TO CLAIM BENEFITS COVERED BY WORKERS' COMPENSATION.

In responding to defendants' motion, plaintiff fails to clearly articulate her argument as to how she is entitled to claim and collect on damages owned, pursuant to C.R.S. § 8-41-203, by her workers' compensation carrier. Plaintiff otherwise ignores the limitations of her cited precedent. It is very true that, where a tortfeasor has not paid for plaintiff's third-party benefits, it cannot nonetheless seek the benefit of that coverage. *Pressey v. Children's Hospital Colorado*, 2017 WL 929931 (Colo. App. 2017) [2] (Medicaid is a "collateral source" and not subject to a set-off) and *Combined Communications Corp. v. Pub. Serv. Co. of Colorado*, 865 P.2d 893, 901–02 (Colo. App. 1993) (workers' compensation benefits are a "collateral source" not subject to a set-off). *See also, Response* at 6, citing, *Adamscheck v. American Family Mut. Ins. Co.*, 818 F.3d 576 (10th Cir. 2016) (same) and *Jones v. Esurance Insurance Co.*, 2016 WL 1558622 (D. Colo. 2016) (same). The "collateral source" rule's prohibition is implicated where a plaintiff obtains benefits from a collateral source wholly independent of the tortfeasor. *§ 38:32.Limitations on damages—Collateral-source rule*, 8 Colo. Prac., Personal Injury Torts And Insurance § 38:32 (3d ed.). *See, also*, *Sunahara v. State Farm Mutual Automobile Insurance Co.*, 280 P.3d 649, 2012 CO 30M (Colo. 2012).

But, where the tortfeasor has contributed to payments made by a collateral source, the "collateral source" rule and prohibition as to set-offs becomes inapplicable and irrelevant. A settlement of a subrogation interest held by the collateral source constitutes "contribution" sufficient to remove the limitations otherwise imposed by the "collateral source rule." *Ferrellgas,*

---

[2] Plaintiff did not collect Medicaid benefits for any injuries at issue in this litigation.

3

*Inc. v. Yeiser,* 247 P.3d 1022, 1025 (Colo. 2011) (By settling the collateral sources' subrogation interests, "…Ferrellgas effectively contributed to the payment by settling Farmers' subrogation claim, thus rendering the collateral source doctrine inapplicable.").

The relationship between plaintiff, PMI, and defendants in this case is governed by the law of subrogation in the context of insurance. When an insurer reimburses a victim for damages pursuant to a claim under the victim's insurance policy, the insurer enjoys a right to subrogation, under which he can stand in the victim's shoes and collect the reimbursed amount from the party responsible for the damages. *Am. Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 323 (Colo.2009). The right can arise pursuant to an express provision in the insurance policy—a "conventional" subrogation right, under principals of equity—an "equitable" subrogation right, or statute. *Id.* "Regardless, once the subrogated insurer has resolved the claim, either through litigation or settlement, the insured is no longer entitled to recover the reimbursed portion of the loss from the responsible party." *Yeiser*, 247 P.3d at 1027, citing, 16 Lee R. Russ & Thomas F. Segalla, *Couch on Ins.* § 222:14 (3d ed.2010) (citation omitted). Furthermore, since she is not the owner of any damages and benefits paid for prior medical treatment, lost wages, or rehabilitation/disability covered by her workers' compensation carrier, she "is in no position to contest the settlement." *Id.* at 1027-28.[3]

---

[3] Plaintiff complains in her motion about not having access to the settlement agreement between defendants and PMI. The legal issues presented in the dueling motions relate to what impact a settlement has on evidence at trial and overall damages – NOT what specific amounts this plaintiff can or cannot claim at trial or collect post-verdict. It is wholly immaterial as to what amount

4

Here, when plaintiff sought and collected benefits from her workers' compensation carrier, she subrogated to the carrier any claim to nonetheless recover the value of those benefits from the tortfeasor. Workers' Compensation is, in almost all cases, an injured worker's exclusive remedy against his or her employer. *Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006). While the Workers' Compensation Act allows injured workers to file private suits against third party tortfeasors, s*ee* § 8-41-203, C.R.S. (2010), it also limits the scope of such claims:

> If any employee entitled to compensation under articles 40 to 47 of this title is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of death, such employee's dependents, may take compensation under said articles and may also pursue a remedy against the other person to recover any damages ***in excess of the compensation available under said articles***.

C.R.S. § 8-41-203(1)(a) (emphasis added).

The claim that is ***not*** owned by the claimant – the "compensation available under said articles" as defined in the above section – is assigned by operation of law to the workers' compensation carrier. C.R.S. § 8 -41-203(1)(b). Under C.R.S. §8-41-203(1)(e)(II), the workers' compensation carrier or self-insured employer, as the beneficiary of the assigned and subrogated cause of action, may pursue its claim independent from the injured employees. C.R.S. § 8-41-

---

Defendants paid to fully resolve PMI's subrogation interests. As just noted, plaintiff has no right to claim any difference between the amounts billed to her workers' compensation carrier and the amounts paid and/or settled for with defendant. *Yeiser*, 247 P.3d at 1027-28. What specific prior treatment, lost wages, and other damages were actually covered by her workers' compensation carrier is a fact driven issue for another day and not currently before the Court.

5

203(1) (c) provides that the workers' compensation carrier's recovery rights extend to all benefits that are payable under the Workers' Compensation Act:

> The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee or, if the employee is deceased, the employee's dependents are entitled under the provisions of said articles, including parts 2 and 3 of article 46 of this title, or for which the employee's employer or insurance carrier is liable or has assumed liability.

The policy behind C.R.S. § 8-41-203 is to avoid double recovery by claimants who have received such workers' compensation benefits. According to the Colorado Court of Appeals, "[t]he governmental interest in preventing double recoveries is significant and is generally held to override a literal or technical interpretation of statutes or insurance policies." *Rocky Mountain Gen. v. Simon*, 827 P.2d 629, 632 (Colo. App. 1992), s*ee also, Farmers Group, Inc. v. Williams*, 805 P.2d 419, 427 n. 6 (Colo. 1991); *Rusch v. Lincoln-Devore Testing Lab.*, Inc., 698 P.2d 832, 834 (Colo. App. 1984); 22 Am. Jur. 2d *Damages* § 35 (1988); *Superturf Inc. v. Monsanto Co.*, 660 F.2d 1275, 1283-84 (8th Cir. 1981) (recovering compensatory damages on two claims is duplicative); *Clappier v. Flynn*, 605 F.2d 519, 529 (10th Cir. 1979) (plaintiff not entitled to separate compensatory damage awards under separate legal theories); *Westric Battery Co. v. Standard Elec. Co.*, 482 F. 2d 1307, 1317 (10th Cir. 1973) (double or duplicative recoveries are invalid). The rule prohibiting double recovery for the same injury applies in cases involving multiple defendants as well as in cases involving multiple claims against a single defendant. *See DeBose v. Bear Valley Church of Christ*, 890 P.2d 214 (Colo. 1994), *rev'd on other grounds*, 928 P.2d 1315 (Colo. 1996).

When plaintiff's workers' compensation provider settled its rights and claims with defendants, that settlement foreclosed plaintiff's ability to nonetheless seek those same benefits

in her own action. The collateral source doctrine is inapplicable to bar the setoff of payments that are in some way are "attributable" to the defendant. *Yeiser*, 247 P.3d at 1028 citing, *Colo. Permanente,* 926 P.2d at 1232 (quoting *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1074 (Colo.1992)). In particular, neither rule is designed to bar the setoff of "[s]ums paid [by the defendant] to avoid liability at trial." *Smith v. Zufelt,* 880 P.2d 1178, 1184 (Colo.1994) (citing with approval *Simon v. Coppola,* 876 P.2d 10, 20–21 (Colo.App.1993) (Briggs, J., specially concurring)). PMI had the right as subrogee to stand in plaintiff's "shoes and resolve the claim without litigation by settling for less than the full value." *Yeiser*, 247 P.3d at, 1027–28. And, "its doing so had no effect on the inevitable extinguishing of [plaintiff's] interest." *Id.* Because defendants effectively settled plaintiff's interests in her prior medical specials and other workers' compensation paid benefits, those damages fully attributable to defendants cannot nonetheless be collected once again by plaintiff in her own action.

Plaintiff's claims in this case are limited to any damages in excess of her workers' compensation benefits. "'The statute in question … limits [plaintiff's] right to retain so much of the recovery as may *exceed* compensation paid to her or for which her employer or the employer's insurance carrier is liable.'" *Id*. (quoting entirely *Kirkham*, 29 Colo. App. at 310, 485 P.2d at 516) (modification in original). Therefore, plaintiff here should be limited to the terms of the relevant statute – a claim for any damages ***in excess of the compensation available*** under the Workers' Compensation Act.

### C. THE COLLATERAL SOURCE RULE DOES NOT OTHERWISE PERMIT PLAINTIFF TO CLAIM BENEFITS PAID BY WORKERS' COMPENSATION.

Plaintiff cannot try to avoid the legal effect of her lack of standing under the guise of the "collateral source rule." Contrary to what plaintiff claims, the collateral source rule does not permit a plaintiff to claim and present evidence of medical bills covered by workers' compensation where a tortfeasor has settled the lien on those benefits. There are two Colorado trial court opinions that squarely address the implications of a tortfeasor's settlement with a workers' compensation carrier. Both opinions support defendants' position that plaintiff is foreclosed from presenting evidence of the monetary value of any benefit afforded her by her workers' compensation carrier and otherwise collecting on those amounts.

In *Ferrales v. Patriot Concrete Plumbing, LLC*, Civil Action No. 2010cv1495, (Denver County District Court, December 8, 2010), attached as <u>Ex. I</u>, the Denver District Court ruled plaintiff was precluded from seeking recovery for benefits paid by his workers' compensation carrier pursuant to C.R.S. §8-41-203. *Id.* at 4-6. No theory under the "collateral source" rule or its prohibitions against set-offs for workers' compensation benefits otherwise allowed a plaintiff to otherwise seek recovery for such benefits. *Id.* at 7. The District Court ruled that the "collateral source" rule, C.R.S. 21-111.6, is irrelevant because the plaintiff is not the "real party in interest as to any past or future medical or rehabilitation benefits, and any claim for the portion of lost wage benefits paid by" the workers' compensation carrier, "- in short, because there is nothing to 'set-off." *Id.*

In *Scholle v. Delta Airlines, Inc.*, 2016 WL 3030983 (Denver County District Court, March 2, 2016), attached as <u>Ex. J</u>, the Denver District Court ruled the plaintiff was precluded from presenting evidence of the amounts of benefits that were covered under workers' compensation where the tortfeasor settled the workers' compensation lien. *Id.* at *6. Specifically, the trial court

held that a workers' compensation carrier's subrogation rights extend to all benefits payable under the workers' compensation act. *Id.* at *4. Plaintiff therefore lacked standing to make a claim for those benefits, including the difference in the amounts billed vs. paid. *Id.* at *4-5.

Here, plaintiff does not deny, and the evidence supports, that she received the following benefits from her workers' carrier:

Billed Medical Treatment:                      $152,575.62
Lost Wages/Disability:                           $19,270.92

TMB/PMI subsequently settled with defendants its lien and subrogation interests for the medical, disability, and lost wages amounts for a confidential amount. As evidenced herein, PMI owned the claims for the $152,575.62 in medical specials, $10,000 in lost wages, and an undisclosed figure in disability damages. Pursuant to its rights, it settled those damages for an amount less than their face value. PMI had the right as subrogee to stand in plaintiff's "shoes and resolve the claim without litigation by settling for less than the full value." *Yeiser*, 247 P.3d at, 1027–28. Plaintiff, lacking any legal right to the claims, "is in no position to contest" the adequacy of the settlement. *Id.*

The value of past medical, lost wages, and rehabilitation/disability values at trial are therefore irrelevant to plaintiff's claims and their admission at trial would violate F.R.E. 401. The perfunctory exercise of admitting the bills for the damages owned by the workers' compensation carrier, only to then back them out of any verdict would be a wasteful exercise and would only accomplish the improper objective of inflaming the jury's deliberations as to valuation of those claims still possessed by plaintiff, in violation of F.R.E. 403. Plaintiff proffers absolutely no basis as to how irrelevant information as to damages not owned by her are nonetheless admissible for a permissible purpose and how this Court can avoid the substantial likelihood that the jury will

misappropriate that information to improperly enhance plaintiff's own damages calculation. Simply put, plaintiff lacks the claims and therefore cannot present the evidence of any prior medical treatment, lost wages, or other benefits covered by workers' compensation.

### III. CONCLUSION

As the scope of discovery and evaluation of both side's case hinges upon this legal determination, this Court is asked to clearly establish the rights of the parties before they advance further in this litigation. As this unique issue of first impression arises under Colorado law, defendants request that this question of law be certified to the Colorado Supreme Court pursuant to Colo. App. R. 21.1(a).

It is defendants' position that plaintiff lacks standing to claim prior medical bills, wages loss, and disability benefits previously resolved in her workers' compensation claim and then in defendants' settlement with the workers' compensation carrier. Plaintiff cannot otherwise seek the difference between the TMB/PMI's (or defendants') payments to satisfy her medical bills and the billed amounts. Admitting such testimony and evidence at trial would insert "unfair prejudice, confusion of the issues, and mislead the jury".

WHEREFORE, defendants, Jorge L. Rios and Seaboard Foods, LLC, respectfully ask this Court to find that evidence billed or paid amounts of benefits afforded plaintiff through workers' compensation are inadmissible at trial and that plaintiff lacks a claim to any part of those amounts in this litigation.

Dated this 3rd day of May 2017.

By: WALTZ|REEVES

s/Christopher R. Reeves
Richard A. Waltz, #11567
Christopher R. Reeves, #44329
1660 Lincoln Street, Suite 2510
Denver, Colorado 80264-3103
 (303)830-8850
dwaltz@waltzreeves.com
creeves@waltzreeves.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true correct copy of defendants' Reply in Support of Their Motion for Declaratory Determination has been served on this 3rd day of May 2017 by service through CM/ECF, addressed to the following:

Michael W. Chaloupka, Esq.
Metier Law Firm, LLC
4828 S. College Avenue
Fort Collins, CO  80525


Maren Lynn Chaloupka, Esq.
Chaloupka, Holyoke, Snyder, Chaloupka, & Longoria, PC
PO Box 2424
1714 2nd Avenue
Scottsbluff, NE  69361


s/Mary Pedersen
Waltz|Reeves