IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-02356-RBJ

ERIN L. LEBSACK,

    Plaintiff,

v.

JORGE L. RIOS,
SEABOARD FOODS, LLC, a Limited Liability Company d/b/a Seaboard Farms,
SEABOARD CORPORATION, a Foreign Corporation,

    Defendants.

# ORDER

This matter is before the Court on the parties' respective motions for a determination of law. *See* ECF Nos. 20, 21.[1] Specifically, they ask this Court to address two basic questions: (1) which claims does Ms. Lebsack have standing to bring in light of a settlement between defendants and her workers' compensation carrier; and (2) what medical expense evidence is admissible in light of the collateral source rule and Colorado workers' compensation law. I answer those questions in this order.

## BACKGROUND

Plaintiff Erin Lebsack alleges that on September 27, 2013, while driving her employer's vehicle, she was struck by a vehicle driven by defendant Jorge L. Rios. ECF No. 1 at ¶ 14. Like

---

[1] There is no procedural rule providing for a "motion for determination of law" as such. The motions could be viewed as motions for partial summary judgment, or motions for a partial declaratory judgment, or motions in limine. Regardless of the label, both parties indicate that they are hampered in their ability to consider settlement or otherwise to proceed with this case until the legal issues they pose are resolved.

Ms. Lebsack, Mr. Rios was driving his employer's vehicle and performing company business at the time of the crash. *Id.* at ¶ 11–12. As a result of the crash, Ms. Lebsack required medical treatment and missed some work. *Id.* at ¶ 61.

Ms. Lebsack claimed and received workers' compensation benefits from her employer, TMB Corporation, through its insurer, Pharmacist Mutual Insurance Company (PMI). ECF No. 20-1. PMI covered Ms. Lebsack's medical treatment costs, lost wages, and physical impairment claims from the date of the crash until June 7, 2016. ECF No. 20-3. Ms. Lebsack's medical treatment was billed at $152,575.62, but PMI satisfied these medical bills by paying the healthcare providers a total of $67,434.46. *Id.* Further, PMI paid Ms. Lebsack $19,270.92 for lost wages and physical impairment. *Id.*

On September 19, 2016 Ms. Lebsack sued Mr. Rios and his employers, Seaboard Foods, LLC, and Seaboard Corporation, (together, "defendants"). ECF No. 1. Ms. Lebsack seeks damages including past and future healthcare expenses, wage losses, permanent impairments and disfigurements, and non-economic losses. *Id.* Relevant to the pending motions, she is specifically seeking to recover for medical treatment at the billed amount of $152,575.62, lost wages totaling $10,000, and an unidentified amount for physical impairment. ECF No. 20 at 2 (referencing *Plaintiff's Initial Disclosure* Ex. E).

One week after Ms. Lebsack filed her suit against defendants, PMI sued defendants in Colorado state court pursuant to its subrogation right as Ms. Lebsack's workers' compensation carrier. ECF No. 20-6. PMI sought the full amount of all benefits it paid to or on behalf of Ms. Lebsack, totaling $90,167.81. *Id.* Later, PMI and defendants settled these claims on March 9, 2017 under confidential terms. ECF No. 20-7.

Shortly thereafter, Ms. Lebsack filed an unopposed motion for a telephonic hearing to discuss the effect of the settlement between PMI and defendants on this case. ECF No. 18. On March 21, 2017 I ordered that in lieu of a hearing, the parties should submit briefing on the issues raised in Ms. Lebsack's motion. ECF No. 19. The motions have been fully briefed. ECF Nos. 20–25.

**ANALYSIS**

This Court has subject matter jurisdiction over this case by reason of diversity of citizenship. 28 U.S.C. § 1332. In diversity actions, a federal court must "apply the substantive law of the forum state," *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014), which, in this case, is Colorado. Because the Colorado Supreme Court has not addressed the precise questions presented here, this Court must "attempt to predict how [Colorado's] highest court would interpret [the issue]." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013); *see also Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) ("Because [Colorado] has not directly addressed this issue, this court must make an Erie-guess as to how the [Colorado] Supreme Court would rule."). This Court may "consider all resources available" in doing so, "including decisions of [Colorado] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (internal quotation marks omitted).[2]

---

[2] In their reply brief defendants request that the questions of law presented by the motions be certified to the Colorado Supreme Court pursuant to Colo. App. R. 21.1(a). ECF No. 23 at 2. However, after considering the briefs, the Court concludes that it can make a reasonable guess at how the Colorado Supreme Court would rule by applying existing statutory and case law.

3

### A. Ms. Lebsack's Claims Post-Settlement.

When a workers' compensation carrier pays an injured employee's expenses that are covered under the workers' compensation statute it is subrogated for the amount of the benefits paid.[3] One option for pursuing its subrogation right is to place a lien on any settlement or judgment the employee might obtain from the tortfeasor. After the employee obtains a settlement or judgment, the employee reimburses the workers' compensation carrier for benefits paid (sometimes negotiated downward for various reasons including to account for a proportionate share of the employee's litigation costs).

Here, however, PMI did not wait for Ms. Lebsack's case against the defendants to run its course. Rather, it filed a state court suit directly against the defendants seeking reimbursement of the benefits it paid to or on behalf of Ms. Lebsack and then settled that claim. The terms of that settlement have not been revealed, but presumably defendants paid less than 100% of the benefits for which PMI sought reimbursement. While defendants agree that initially both PMI and Ms. Lebsack had the right to pursue claims against defendants for the amount that PMI paid on Ms. Lebsack's behalf, they argue that after PMI settled with defendants both PMI's *and* Ms. Lebsack's claims were extinguished. Ms. Lebsack, in contrast, argues that the timing of defendants' settlement with PMI was a strategic "trick" hatched by defendants to reduce her

---

[3] The relevant statute, Section 8-41-203(1)(b), provides:

> The payment of compensation pursuant to articles 40 to 47 of this title shall operate as and be an assignment of the cause of action against such other person to . . . . the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury.

potential damage recovery, and that it contravened established law. ECF No. 21 at 10 ("It is a trick to manipulate one measure of Lebsack's damages in a manner that the Colorado state and federal courts have disapproved.").

The established law to which she refers is the "collateral source rule." Under that rule, codified at C.R.S. § 13-21-111.6, a plaintiff's damage claim must be reduced by the amount by which she has been compensated by a third party unless the third party payment was the result of a contract entered into and paid for by the plaintiff. Thus, if an injured plaintiff's medical expenses were paid by her own health insurance carrier, her claim against the tortfeasor who caused her injuries is not reduced by her insurer's payment of those expenses. Moreover, the plaintiff may recover the full amount of the medical expenses billed by the healthcare providers, not the discounted amount to which the providers agreed as a result of negotiations with plaintiff's health insurer. *See Volunteers of America Colorado Branch v. Gardenswartz*, 242 P.3d 1080, 1085-88 (Colo. 2010). Indeed, the amount actually paid by her health insurer to settle the bills of the healthcare provider is not even admissible in evidence. *Wal-Mart Stores, Inc.,* 276 P.3d 562, 566-68 (Colo. 2012). Plaintiff posits that workers' compensation benefits are treated like one's own health insurance benefits for purposes of the collateral source rule, *see* ECF No. 21 at 6, n.1, and I will assume, without deciding, that that is so.

Nevertheless, I agree with defendants. PMI stepped into Ms. Lebsack's shoes to the extent of the benefits it paid to her or on her behalf. It thus obtained the right, as subrogee, to pursue a claim for reimbursement of those benefits directly against the defendants whose tortious conduct allegedly caused the injuries and losses. In effect, it was pursuing the claim that Ms. Lebsack otherwise would have had against the defendants. Thus, when defendants settled PMI's

subrogation claim, Ms. Lebsack's claim for the amounts covered by the workers' compensation statute was extinguished. *Ferrellgas, Inc. v. Yeiser,* 247 P.3d 1022, 1028 (Colo. 2011). The collateral source rule no longer applied. *Id.* at 1028 ("The collateral source doctrine is inapplicable to bar the setoff of payments that are in some way 'attributable' to the defendant."). While this might have reduced defendants' ultimate exposure, it was not a "trick." Rather, defendants took advantage of existing subrogation law. The fact that the terms of the settlement have not been revealed is immaterial. The settlement, regardless of the terms, concluded the dispute with the defendants to the extent of the injuries and losses that were covered under the workers' compensation statute.

It is unclear whether plaintiff is suggesting that she should, nevertheless, be entitled to recover the difference between the amounts billed by her healthcare providers and the amount paid to them by PMI. If so, I disagree. First, as I have indicated, defendants' settlement of PMI's subrogation claim extinguished her claim for recovery of medical expenses or other amounts resolved by PMI. Second, as discussed below, the workers' compensation statute does not permit healthcare providers to recover more than what is allowed in the workers' compensation fee schedule. *See* C.R.S. § 8-42-101(3)(a)(1). Plaintiff could not have been liable for expenses in excess of what workers' compensation paid; PMI's acceptance of liability for Ms. Lebsack's medical payments permanently prohibited Ms. Lebsack's medical providers from seeking those costs or fees from her. C.R.S. § 8-42-101(4). Plaintiff cannot recover from defendants amounts that the healthcare providers could not lawfully charge and that she had no obligation to pay.

Accordingly, I answer the first of the two questions posed by the pending motions in the

defendants' favor: Because PMI and defendants settled PMI's subrogation claim for all benefits paid to or on behalf of Ms. Lebsack—namely medical treatment costs, lost wages, and physical impairment from September 7, 2013 until June 2, 2016—Ms. Lebsack no longer has standing to seek compensation from defendants for these benefits. This holding does not preclude Ms. Lebsack's claim to the extent she seeks to recover damages in excess of the compensation available under the workers' compensation statute. C.R.S. § 8-41-203.

## B. <u>Admissibility of Medical Treatment Cost Evidence</u>.

The parties dispute which numerical figure related to medical costs—the billed amount versus the amount paid by PMI—should be presented to the jury. This dispute does not concern whether or not the jury may be apprised of the fact that Ms. Lebsack received compensation before trial; instead, this debate concerns which number will be presented to the jury for such use as it might make of it in determining damages not extinguished by the workers' compensation claim.

Ms. Lebsack contends that the jury should be presented with evidence of the billed amount of her medical treatments without mention of the amount PMI actually paid to the medical providers. ECF No. 21. In Ms. Lebsack's view, allowing the defendants to introduce evidence of the amount that was actually paid for her medical treatment would violate the protections of the collateral source rule because it could "tip off" the jury to the existence of a collateral source payment. However, as I have said, the collateral source rule does not apply on the facts of this case.

Under the Colorado workers' compensation payment scheme, a billed amount in excess of the fee schedule is "unlawful, void, and unenforceable." C.R.S. § 8-42-101(3)(1)(a). The

7

billed amount therefore does not represent any legitimate numerical figure related to Ms. Lebsack's damages. It has no "tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. I conclude that evidence of the amounts billed is irrelevant in the context of this case.

But even if the billed amount were relevant in some manner, I would conclude under Fed. R. Evid. 403 that there is an unjustified risk that the jury might hold defendants liable for medical bills that are void and unenforceable under Colorado law and that never constituted a loss to Ms. Lebsack. Presenting evidence of this sort potentially would mislead the jury and, therefore, would be unfairly prejudicial to the defendants. Defendants do not argue that evidence of the amount paid the healthcare providers is irrelevant or otherwise inadmissible. Accordingly, I answer the second question posed by the pending motions that evidence of the amount paid by PMI to plaintiff's healthcare providers is admissible, but evidence of any amount billed by those providers in excess of the workers' compensation fee schedule is not admissible.

**ORDER**

Defendants' motion for a determination of law, ECF No. 20, is GRANTED. Plaintiff's motion for a determination of law, ECF No. 21, is DENIED.

DATED this 14th day of November, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge